IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>) Civil Action No. _____<br>v. )<br>)<br>CHEMTRONICS, INC., )<br>AND NORTHROP GRUMMAN SYSTEMS )<br>CORP. )<br>)<br>Defendants. )<br>_____) | |

## **COMPLAINT**

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## **STATEMENT OF THE CASE**

1. This is a civil action against Defendants Chemtronics, Inc. ("Chemtronics") and Northrup Grumman Systems Corp. ("NGSC") (together, the "Defendants") under Sections 106, 107(a) and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9606, 9607(a), and 9613(g)(2), and Section 7003 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973. The United States seeks to recover response costs that it has incurred in conducting response activities in connection with the release or threatened release of hazardous substances into the environment at or from the Chemtronics Superfund Site, located in the community of Swannanoa, in Buncombe County, North Carolina (the "Site"), under Section 107(a) of

1

CERCLA, 42 U.S.C. § 9607(a). The United States further seeks injunctive relief, under Section 106 of CERCLA, 42 U.S.C. § 9606, and under Section 7003 of RCRA, 42 U.S.C. § 6973, requiring that the Defendants take action to abate conditions at or near the Site that may present an imminent and substantial endangerment to the public health or welfare or the environment because of actual and threatened releases of hazardous substances (CERCLA) and solid and/or hazardous wastes (RCRA) into the environment at or from the Site. Finally, the United States seeks a declaratory judgment, under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), declaring that all the Defendants will be liable for any further response costs that the United States may incur as a result of a release or threatened release of hazardous substances into the environment at or from the Site.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), Section 7003(a) of RCRA, 42 U.S.C. § 6973(a), and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this district under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), Section 7003 of RCRA, 42 U.S.C. § 6973, and 28 U.S.C. § 1391(b) and (c) because the claims arose and the threatened and actual releases of hazardous substances (CERCLA) and solid wastes and/or hazardous wastes (RCRA) occurred in this district.

## DEFENDANTS

4. Chemtronics is a company that currently owns and operates the Site. Chemtronics also owned and/or operated the Site, or a portion thereof, at the time of disposal of hazardous substances. Additionally, Chemtronics is a successor-in-interest to Airtronics, Inc. ("Airtronics"),

2

Case 1:20-cv-00272   Document 1   Filed 09/29/20   Page 2 of 13

which operated the Site, or a portion thereof, both individually and through its wholly-owned subsidiary by the same name, Chemtronics, Inc., at the time of disposal of hazardous substances.

5. NGSC is a company that is the successor-in-interest to Northrup Carolina, Inc. ("NCI"), which owned and/or operated the Site, or a portion thereof, at the time of disposal of hazardous substances.

6. Each of the Defendants, as well as their predecessors-in-interest, is a "person" within the meaning of CERCLA Section 101(21), 42 U.S.C. § 9601(21), and RCRA Section 1004(15), 42 U.S.C. § 6903(15).

## GENERAL ALLEGATIONS

### A. Site Ownership, Operation, and Disposal History

7. The Site encompasses 541.9 acres of a 1,065-acre property currently owned by Chemtronics located at 180 Old Bee Tree Road, in Swannanoa, Buncombe County, North Carolina (the "Property").

8. The Chemtronics Site was an active manufacturing facility from 1952 until 1994.

9. From 1952 through 1965, the Site was owned and operated by predecessors-in-interest to CNA Holdings, LLC ("CNA").

10. The Site was owned by NGSC's predecessor-in-interest NCI from 1965 through 1978, and the Site was operated by NCI from 1965 through 1971.

11. Chemtronics' predecessor-in-interest, Airtronics, began operating at the Site in 1971. Chemtronics continued Airtronics' operations beginning in 1977 through 1994.

12. Chemtronics acquired the Site from NCI in 1978 and has owned Site since then.

3

13. From 1952 to 1971, solid waste and/or hazardous waste materials, solvents, spent acid, and other chemical wastes were disposed of at the Site in what is now referred to as the Acid Pit Area, in the Back Valley, as well as in the Front Valley.

14. Specifically, waste materials generated in the production of incapacitating agents, 3- quinuclidinyl benzilate (BZ) and the tear gas agent, o-chlorobenzylidene malononitrile (CS), were placed in 55 gallon drums, covered with a decontaminating 'kill' solution and then buried on-site in trench-type landfills at the Site.

15. From 1971 to 1975, Airtronics disposed of liquid wastes in on-Site pits and trenches and burned solid wastes, rocket motors, explosive wastes, and other materials, in the Acid Pit Area at the Site.

16. From 1975 to 1979, Airtronics/Chemtronics constructed additional pits and trenches in the Acid Pit Area for the disposal of spent acid and various organic wastes.

17. In 1979, Chemtronics installed a 500,000-gallon lagoon in the Front Valley with a lined bottom for the biotreatment of wastewaters from manufacturing activities. The lagoon was constructed on top of an abandoned leach field that was associated with the facility's main production and manufacturing building.

18. After the lagoon was filled, it lost its contents due to the incompatibility of the liner with the brominated waste introduced into the lagoon.

19. Reconstruction of the lagoon with a different liner was completed in August 1980.

20. The lagoon was in use until 1984, at which time it was decommissioned.

**B.** **Enforcement History**

21. The Site was placed on the National Priorities List ("NPL") in December 1982.

22. On April 5, 1988, EPA issued a Record of Decision ("1988 ROD") primarily to address 23 known waste disposal areas associated with past operations. The remedy provided under the 1988 ROD involved capping and fencing the six principal waste disposal areas in the Front and Back Valley with waste left in-place, and installing a groundwater pump-and-treat system, together with continued monitoring of groundwater and surface water.

23. In 1989, EPA issued a ROD Amendment ("ROD Am. No. 1"), removing from the remedy some contaminated soil stabilization and solidification that was no longer necessary.

24. ROD Am. No. 1 was implemented under a 1989 Remedial Design/Remedial Action ("RD/RA") Unilateral Administrative Order ("UAO") issued to the Defendants and/or their predecessors and Hoechst-Celanese Corp., a predecessor-in-interest to CNA.

25. Remedial construction on the remedy outlined in the ROD Am. No. 1 began in December 1991 and was completed in March 1993.

26. In 1990, EPA completed a Facility Assessment ("RFA") at the Site pursuant to the Resource Conservation and Recovery Act ("RCRA"). The RFA included the areas that were not being addressed under CERCLA pursuant to the 1988 ROD and ROD Am. No. 1, and identified 117 solid waste management units ("SWMUs") and 6 Areas of Concern to be further evaluated by the State of North Carolina Department of Environment and Natural Resources ("NCDENR"), the predecessor agency to the North Carolina Department of Environmental Quality ("NCDEQ"), under North Carolina's RCRA Corrective Action program.

27. In August 1997, Chemtronics entered into an Administrative Order on Consent ("AOC") with the NCDENR for completion of a RCRA Site Investigation and Corrective Measures Study to address RCRA concerns at the Site. Subsequent RCRA actions at the Site

5

Case 1:20-cv-00272   Document 1   Filed 09/29/20   Page 5 of 13

under the NCDENR's supervision consisted of soil, groundwater and surface water sampling, soil excavation, and the cleaning and closing of wastewater sumps.

28. On March 9, 2007, EPA assumed full oversight authority for the Site under its Superfund Program.

29. On October 27, 2008, Defendants and CNA entered into a Site-wide AOC with EPA for Defendants and CNA to conduct a Remedial Investigation and Feasibility Study ("RI/FS") for the Site (hereafter, the "2008 RI/FS AOC").

30. The Remedial Investigation ("RI") fieldwork was conducted in 3 phases between December 2009 and July 2012.

31. Based on the results of the RI, the Feasibility Study ("FS") was conducted between January 2012 and February 2016, and included *inter alia* several bench and pilot scale treatability studies.

32. EPA has determined that there is or may be an imminent and substantial endangerment to public health or welfare or the environment because of actual and threatened releases of hazardous substances into the environment at and from the Site.

33. On September 29, 2016, EPA issued a second amendment to the 1988 ROD ("ROD Am. No. 2"), selecting a combination of remedial alternatives which were evaluated under the FS, including (1) Excavation of contaminated soil for certain contaminated areas; (2) Enhanced In-Situ Bioremediation with long-term groundwater monitored natural attenuation for contaminated groundwater for certain contaminated areas; (3) placement of Institutional Controls at the Site to, at a minimum, (i) limit the use of the Site to either commercial or industrial purposes, and (ii) restrict groundwater use and prevent the use of on-Site groundwater for potable purposes; (4) maintenance of the caps and engineering controls for six existing disposal

areas as required by the original EPA Record of Decision relating to the Site; (5) implementation of performance monitoring and evaluation; (6) elimination of the requirement for pumping and treating groundwater as specified in the 1988 ROD; and (7) periodic evaluation of the selected remedy.

## SPECIFIC ALLEGATIONS

34. Benzene, carbon tetrachloride, chloroform, 1,2-dichloroethane, 1,2-dichloroethene, dichloromethane, tetrachloroethene, trichloroethene, and vinyl chloride, are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), because they are listed at 40 C.F.R. § 302.4 App. A pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602.

35. Benzene, carbon tetrachloride, chloroform, 1,2-dichloroethane, 1,2-dichloroethene, dichloromethane, tetrachloroethene, trichloroethene, and vinyl chloride are solid wastes, as defined by 42 U.S.C. § 6903(27).

36. Benzene, carbon tetrachloride, chloroform, 1,2-dichloroethane, 1,2-dichloroethene, dichloromethane, tetrachloroethene, trichloroethene, and vinyl chloride, are hazardous wastes, as defined by 42 U.S.C. § 6903(5), because they are listed at 40 C.F.R. §§ 261.31 through 261.33 pursuant to 40 C.F.R. § 261.3(a).

37. Benzene, carbon tetrachloride, chloroform, 1,2-dichloroethane, 1,2-dichloroethene, dichloromethane, tetrachloroethene, trichloroethene, and vinyl chloride have come to be located at the Site.

38. The Site is a "facility" within the meaning of CERCLA Section 101(9), 42 U.S.C. § 9601(9), because the Site is a site or area where hazardous substances have been "deposited, stored, disposed of, or placed, or otherwise come to be located."

7

39. There was a "release" or threatened "release" of hazardous substances into the "environment" at or from the Site, within the meaning of CERCLA Sections 101(8) and 101(22), 42 U.S.C. §§ 9601(8) and 9601(22), because the hazardous substances described in paragraph 34 have been detected in the soil and groundwater at the Site.

40. During operations at the Site, hazardous substances including benzene, carbon tetrachloride, chloroform, 1,2-dichloroethane, 1,2-dichloroethene, dichloromethane, tetrachloroethene, trichloroethene, and vinyl chloride were deposited, dumped, spilled, leaked, and/or placed and thus "disposed" at the Site, within the meaning of CERCLA Section 101(29), 42 U.S.C. § 9601(29), and 42 U.S.C. § 6903(3).

41. Chemtronics and/or at least one of its predecessors owned the Site at the time of disposal of hazardous substances, within the meaning of CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2).

42. Chemtronics and/or at least one of its predecessors operated at the Site at the time of disposal of hazardous substances, within the meaning of CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2).

43. Chemtronics currently owns the Site, within the meaning of CERCLA Section 107(a)(1), 42 U.S.C. § 9607(a)(1).

44. Chemtronics currently operates the Site, within the meaning of CERCLA Section 107(a)(1), 42 U.S.C. § 9607(a)(1).

45. At least one of NGSC's predecessors owned the Site at the time of disposal of hazardous substances, within the meaning of CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2).

46. At least one of NGSC's predecessors operated at the Site at the time of disposal of hazardous substances, within the meaning of CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2).

47. In undertaking response actions to address the release and threatened release of hazardous substances at the Site, the EPA has incurred "response" costs as defined in CERCLA Section 101(25), 42 U.S.C. § 9601(25).

48. As of August 9, 2017, EPA has incurred unreimbursed response costs of approximately $266,030.43 for the Site.

49. In undertaking response actions to address the release and threatened release of hazardous substances at the Site, the EPA will continue to incur "response" costs as defined in CERCLA Section 101(25), 42 U.S.C. § 9601(25).

50. The EPA's response actions taken at or in connection with the Site and the costs incurred incident thereto were not inconsistent with the National Contingency Plan.

## **FIRST CLAIM FOR RELIEF**
**(Recovery of Response Costs Pursuant to CERCLA Section 107(a))**

51. The allegations contained in paragraphs 1 through 50 are re-alleged and incorporated herein by reference.

52. Each of the Defendants is within the class of liable persons described in CERCLA Section 107(a)(1) or (2), 42 U.S.C. § 9607(a)(1) or (2), because each is either the current owner and/or operator of the Site, or owned and/or operated the Site at the time of disposal of hazardous substances at the Site, or is a successor-in-interest to such persons.

53. Pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), each of the Defendants is jointly and severally liable to the United States for all costs incurred by the United

9

Case 1:20-cv-00272   Document 1   Filed 09/29/20   Page 9 of 13

States in connection with the Site, including enforcement costs and prejudgment interest on such response costs.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment Under CERCLA Section 113(g)(2))

54. The allegations contained in paragraphs 1 through 50 are re-alleged and incorporated herein by reference.

55. CERCLA Subsection 113(g)(2), 42 U.S.C. § 9613(g)(2), specifies that in any action for recovery of costs under CERCLA Section 107, 42 U.S.C. § 9607, "the court shall enter a declaratory judgment on liability for response costs ...that will be binding on any subsequent action or actions to recover further response costs ...."

56. The United States will continue to incur response costs associated with the Site that are recoverable as response costs under CERCLA.

57. Pursuant to CERCLA Section 113(g), 42 U.S.C. § 9613(g), a declaratory judgment should be entered against each of the Defendants holding each of them jointly and severally liable to the United States for future response costs incurred by the United States that will be binding in any subsequent action or actions seeking to recover further response costs or damages incurred by the United States in connection with the Site.

## THIRD CLAIM FOR RELIEF
### (Injunctive Relief Under CERCLA Section 106)

58. The allegations contained in paragraphs 1 through 50 are re-alleged and incorporated herein by reference.

59. Pursuant to CERCLA Section 106(a), 42 U.S.C. § 9606(a), each of the Defendants is jointly and severally liable for injunctive relief to abate the danger or threat

presented by releases or threatened releases of hazardous substances into the environment at and from the Site.

60. EPA has determined that the remedy selected in ROD Am. No. 2 is necessary to abate the danger or threat at or from the Site.

61. Therefore, under CERCLA Section 106(a), 42, U.S.C. § 9606(a), each of the Defendants is jointly and severally liable to undertake the remedial action identified in ROD Am. No. 2.

## FOURTH CLAIM FOR RELIEF
### (Performance of Response Actions Under RCRA Section 7003)

62. The allegations contained in paragraphs 1 through 50 are re-alleged and incorporated herein by reference.

63. Section 7003(a) of RCRA, 42 U.S.C. § 6973(a), provides in pertinent part:

> [U]pon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent or substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States . . . against any person . . . to restrain such person from such handling, storage, treatment, transportation, or disposal, to order such person to take such other action as may be necessary, or both.

64. Solid wastes and/or hazardous wastes, as defined in Section 1004 of RCRA, 42 U.S.C. § 6903, are present at the Site.

65. Defendants' handling, storage, treatment, transportation, or disposal of solid and/or hazardous waste at the Site may present an imminent and substantial endangerment to health or the environment.

66. Therefore, under RCRA Section 7003, 42, U.S.C. § 6973, Defendants are liable for certain actions at the Site in order to abate the danger or threat to health or the environment.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

1. Enter judgment in favor of the United States and against the Defendants, jointly and severally, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all costs incurred by the United States, including enforcement costs and prejudgment interest, for response actions taken in connection with the Site;

2. Enter a declaratory judgment of liability in favor of the United States and against the Defendants, under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that will be binding on any subsequent action or actions to recover further response costs;

3. Order the Defendants to abate the conditions at the Site that may present an imminent and substantial endangerment to the public health or welfare or the environment by undertaking the remedy selected in ROD Am. No. 2, pursuant to CERCLA Section 106(a), 42, U.S.C. § 9606(a);

4. Order Defendants to take action necessary to abate the imminent and substantial endangerment to health or the environment pertaining to releases and threatened releases of solid and/or hazardous waste at the Site, pursuant to Section 7003(a) of RCRA, 42 U.S.C. § 6973(a);

5. Award the United States its costs of this action; and

6. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

/s/ Rachael Amy Kamons
RACHAEL AMY KAMONS
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington DC 20044
Phone: (202) 514-5260 / Fax: (202) 616-2427
Email: rachael.kamons@usdoj.gov

R. ANDREW MURRAY
United States Attorney
Western District of North Carolina

/s/ Gill P. Beck
GILL P. BECK
Assistant United States Attorney
N.C. State Bar No. 13175
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Phone: (828) 271-4661 / Fax: (828) 271-4327
Email: Gill.Beck@usdoj.gov

Of Counsel:

F. MARSHALL BINFORD, JR.
Associate Regional Counsel
U.S. EPA Region 4
61 Forsyth Street, SW
Atlanta, Georgia 30303
Telephone: (404) 562-9543
E-mail: binford.marshall@epa.gov

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rachael Amy Kamons, US DOJ, P.O. Box 7611, Ben Franklin Station, Washington, DC 20044; Tel: 202-514-5260

## DEFENDANTS
Chemtronics, Inc. and Northrop Grumman Systems Corp.

County of Residence of First Listed Defendant   Harris County, TX
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 9606, 9607(a), and 9613(g)(2); 42 U.S.C. 6973(a)

Brief description of cause:
CERCLA and RCRA civil action for injunctive relief, recover response costs, declaratory judgment for future costs

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 09/24/2020
SIGNATURE OF ATTORNEY OF RECORD: /s/ Rachael Amy Kamons

**FOR OFFICE USE ONLY**
RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

Case 1:20-cv-00272   Document 1-1   Filed 09/29/20   Page 1 of 1