# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:20-cv-00272-MR

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| CHEMTRONICS, INC. and | ) | |
| NORTHROP GRUMMAN SYSTEMS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Proposed Intervenor WASCO LLC's Motion to Intervene as a Matter of Right [Doc. 11].

## I.   BACKGROUND

On September 29, 2020, the United States filed this civil action pursuant to Sections 106, 107(a), and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and Section 7003 of the Resource Conservation Recovery Act ("RCRA") against Defendants Northrop Grumman Systems Corporation ("Northrop") and Chemtronics, Inc. ("Chemtronics"). [Doc. 1]. Contemporaneously with the Complaint, the parties filed a proposed Consent Decree resolving the United States' claims. [Doc. 2]. By this action, the United States seeks response

costs, declaratory relief, and injunctive relief in connection to a Superfund Site (hereinafter the "Chemtronics Superfund Site" or "Site"). [See Doc. 1]. The Site encompasses 541.9 acres of a 1,065-acre property owned by Chemtronics (hereinafter the "Chemtronics Property"). [Id. at ¶ 7]. The United States asserts that the hazardous waste at issue herein was deposited at the Site by Defendant Northrop, and that Defendant Chemtronics is the present owner of the property. [See Id. at ¶¶ 34-46]. Counsel for the parties represent that the proposed Consent Decree, if entered, will resolve the United States' claims in this matter. [Doc. 2].

Prior to this case being instituted, WASCO LLC (WASCO) filed a civil action on August 18, 2020, pursuant to CERCLA against Defendants Northrop, Chemtronics, and others for recovery of response costs incurred as a result of the release or threatened release of hazardous substances at a property known as Asheville Dyeing and Finishing Facility (hereinafter "AD&F Facility"). [NDL[1] Doc. 1]. The AD&F Facility property is near, but not contiguous to, the Site and the Chemtronics Property. [See Docs. 8-1 at 3, 15; 15 at 2]. In that case, WASCO alleges that, Northrop formerly owned the

---

[1] Because this Order must reference documents filed in WASCO's separate civil case (1:20-cv-227-MR) regarding the Northrop Dump Litigation ("NDL") and the present case, the Court will cite to documents from WASCO's separate civil case with the prefix "NDL."

AD&F Facility, and during that period Northrop systematically and deliberately disposed of its industrial wastes on a one-acre portion of that property (hereinafter the "Northrop Dump"). [NDL Doc. 69 at ¶ 21]. Specifically, WASCO alleges that Northrop deliberately disposed of industrial wastes originally created at the Chemtronics Superfund Site by burning and dumping such wastes at the Northrop Dump, including by abandoning and burying 55-gallon drums containing chemical wastes at the Northrop Dump that have caused releases and/or threatened releases of hazardous substances to the environment. [NDL Id. at ¶¶ 22-30, 35; Doc. 69-1 (detailing substances)]. On September 30, 2021, the Court dismissed WASCO's contribution claim pursuant to 42 U.S.C. § 9613(f) ("CERCLA § 113(f)") against the Defendants. [See NDL Doc. 98]. However, the Court allowed WASCO's cost recovery claim pursuant 42 U.S.C. § 9607(a) ("CERCLA § 107(a)") to proceed. [NDL Id.].

After filing of the Complaint and proposed Consent Decree, the parties in this case undertook no further activity for a period of six months.[2] Thereafter, the Court entered an Order for the parties to show cause as to why the proposed Consent Decree should not be entered in this matter. [Doc.

---

[2] The 30-day period for public comment on the proposed Consent Decree ended on November 4, 2020. [See Notices, 85 Fed. Reg. 62763 (October 5, 2020)].

7]. On April 12, 2021, the United States filed a Motion for Entry of Judgment of the Consent Decree. [Doc. 8]. On April 13, 2021, WASCO filed the present motion to intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure ("Rule 24(a)(2)") and 42 U.S.C. § 9613(i) ("CERCLA § 113(i)"). [Doc. 11]. On April 26, 2021, the United States filed a Response opposing WASCO's intervention. [Doc. 15]. On April 27, 2021, Defendants filed a Response, similarly opposing WASCO's intervention. [Doc.16]. On May 3, 2021, WASCO filed a Reply. [Doc. 17].

Having been fully briefed, the motion is ripe for disposition.

## II.    STANDARD OF REVIEW

Both Federal Rule of Civil Procedure 24(a)(2) and Section 113(i) of CERCLA provide a right to non-parties to intervene in litigation under certain circumstances. Rule 24(a)(2) provides that:

> On timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). In comparison, CERCLA § 113(i) provides that:

> In any action commenced under this chapter or under the Solid Waste Disposal Act in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the

4

subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

42 U.S.C. § 9613(i). Due to the similarities in the language between Rule 24(a)(2) and CERCLA § 113(i), courts have generally applied the standard regarding intervention under Rule 24(a)(2) to cases specifically addressing intervention under CERCLA § 113(i). See United States v. Exxonmobil Corp., 264 F.R.D. 242, 245 (N.D.W. Va. 2010).

To intervene as of right under Rule 24(a)(2), the proposed intervenor "must show that (1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties." Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders' Ass'n, 646 F.2d 117, 120 (4th Cir. 1981). Under CERCLA § 113(i), the burden of proof on this third element is shifted to the Government. See 42 U.S.C. § 9613(i).

## III. DISCUSSION

WASCO moves to intervene in this matter asserting that the proposed Consent Decree's definition of the Site could inadvertently make the liability protections afforded to the Defendants in this settlement applicable to its

5

ongoing Northrop Dump Litigation. [Doc. 12]. The proposed Consent Decree defines the Site as follows:

> "Site" shall mean the Chemtronics Superfund Site, presently encompassing 541.9 acres of the Chemtronics Property, in Buncombe County, North Carolina, *and any contamination emanating from it*, and depicted generally on the map attached as Appendix D.

(emphasis added) [Doc. 2-1 at ¶ 4]. WASCO argues that the second clause of this definition could be interpreted as including *any* contamination found at the Northrop Dump. [Doc. 12 at 7]. Specifically, WASCO argues that Northrop might rely on such a broad definition to claim that liability protection afforded in the Consent Decree extends to any responsibility for the Northrop Dump, including responsibility for any contaminated material that was transported from the Site to the Northrop Dump. [Id. at 7-8]. Consequently, without language explicitly excluding the Northrop Dump from the definition of the Site, WASCO argues the entry of the proposed Consent Decree may adversely affect WASCO's right to recover its cleanup costs from Northrop in the Northrop Dump Litigation. [Id. at 9]. On the other hand, the United States and Defendants argue that the definition of the Site in the proposed Consent Decree is unambiguous and does not encompass the Northrop Dump, and therefore entry of the Consent Decree will have no effect on WASCO's Northrop Dump Litigation. [Docs. 15, 16].

The interpretation of the phrase "any contamination emanating from it" rests on the definition of the verb "to emanate." It is defined as the "act of coming or flowing forth from something." Black's Law Dictionary (11th ed. 2019). "To emanate" comes from the Latin "emanatus," meaning to flow forth.[3] To expand the definition to include transporting to a remote location does violence to the word and its history.[4] Here, the hazardous substances of concern at the Northrop Dump are a result of industrial wastes that allegedly *originated* at the Site and were then *transported* to the Northrop Dump. [See Docs. 8-1, 9-1, 10-4, 11-1, 12; NDL Doc. 69]. WASCO's argument expanding the understanding of the term "emanating" to include the acts of transporting and dumping industrial wastes, would result in absurdity under the proposed Consent Decree. For instance, contaminated soil excavated from the Site and transported to an out-of-state facility would result in that out-of-state facility becoming *a part of the Site* under the proposed Consent Decree. The Chemtronics Property and the AD&F Facility are not adjoining properties. [Docs. 8-1 at 3, 15; 15 at 2]. WASCO offers no

---

[3] Merriam-Webster Dictionary, *at* www.merriam-webster.com/dictionary/emanate (last visited April 6, 2022).

[4] For example, "the right of privacy is a fundamental personal right, *emanating* 'from the totality of the constitutional scheme under which we live.'" Griswold v. Connecticut, 381 U.S. 479, 494, 85 S. Ct. 1678, 1687, 14 L. Ed. 2d 510 (1965) (Goldberg, J., concurring) (emphasis added).

standard for differentiating between the dumping of waste three properties away as opposed to three states away. As such, the Site, as defined in the proposed Consent Decree, cannot reasonably be understood to include the Northrop Dump.[5]

In addition, WASCO's argument ignores the last phrase of the definition of the Site: "and generally depicted on the map attached as Appendix D." [Doc. 2-1 at ¶ 4]. The Northrop Dump property is not shown on that map. [See Doc. 2-14 at 3].

WASCO next argues that its claims in the Northrop Dump Litigation could be affected by the Consent Decree's provision protecting the Defendants from any CERCLA § 113(f) contribution claims. WASCO's claim

---

[5] WASCO also states that it intends to file a citizen's suit under the Resource Conservation and Recovery Act ("RCRA") against Northrop, alleging that the Northrop Dump may present an imminent and substantial endangerment to human health and the environment. [Doc. 12 at 4, 6-7]. WASCO argues that:

> However, Section 7002(b)(2)(B) of RCRA prevents any party from commencing such a citizen suit if EPA is diligently prosecuting an action regarding the same conditions under Section 7003 of RCRA. Given that the Consent Decree invokes EPA's authority under Section 7003 of RCRA, if the Site (for purposes of the Consent Decree) could include the Northrop Dump, the Consent Decree could be read to bar WASCO's forthcoming citizen suit and force WASCO to bear the burden of cleaning up Northrop's dump alone.

[Id. at 7]. If this present action included the Northrop Dump, then WASCO's intended citizen's suit under RCRA was barred as of the United States filing this action. [Docs. 1 at 1, 2-1 at 3]. However, the present action does not include the Northrop Dump, and resolution of this case by entry of the proposed Consent Decree would have no effect on any citizen's suit WASCO may file regarding the Northrop Dump.

in its separate suit, however, is not a contribution claim. It is a cost-recovery claim pursuant to CERCLA § 107(a) for remediation of the Northrop Dump. Under CERCLA, the contribution protection afforded to a settling party "does not by its terms protect against § 107(a) cost-recovery liability." United States v. Atl. Rsch. Corp., 551 U.S. 128, 129, 127 S. Ct. 2331, 2333, 168 L. Ed. 2d 28 (2007).

Further, WASCO's proposed intervenor complaint, similar to its allegations in the Northrop Dump Litigation, states that WASCO did not cause or contribute to the environmental contamination at any part of the AD&F Facility or Northrop Dump. [Doc. 11-1 at ¶ 47-48]. As such, WASCO admits facts that would bar a contribution claim against Northrop or Chemtronics. For this reason, its previous contribution claim relating to the Northrop Dump litigation has been previously dismissed. [See NDL Doc. 98]. Therefore, WASCO has not shown that it has "a significantly protectable interest" in the present litigation such that intervention is warranted. Teague, 931 F.2d at 261.

For these reasons, the Court concludes that WASCO has not shown that it has a sufficient interest to intervene as of right under either Rule 24(a)(2) or CERCLA § 113(i). Accordingly, WASCO's Motion to Intervene will be denied.

**IT IS, THEREFORE, ORDERED** that proposed Intervenor WASCO LLC's Motion to Intervene as a Matter of Right [Doc. 11] is **DENIED**.

**IT IS SO ORDERED.**

Signed: April 14, 2022

Martin Reidinger
Chief United States District Judge